UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at WINCHESTER

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | 4:09-cr-19 |
| | ) | Mattice / Lee |
| HOWARD CLAY HUNTER | ) | |

**REPORT AND RECOMMENDATION**

Defendant Howard Hunter ("Defendant") filed a motion to suppress audio-recorded statements taken by law enforcement officers on April 4, 2008 [Doc. 19]. The United States filed a response in opposition to the motion to suppress [Doc. 27]. Defendant's motion was referred for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1) [Doc. 23].

**I.    Introduction**

An evidentiary hearing on the motion was held August 20, 2009. The parties' arguments, including supporting pleadings [Doc. 19, 27], have been carefully reviewed and fully considered. In summary, I find no constitutional violation with respect to Defendant's statements. Thus, for the reasons set forth herein, I **RECOMMEND** that Defendant's motion [Doc. 19] be **DENIED**.

**II.    Facts**

Defendant was arrested on April 4, 2008, for the robbery of Bennett's Pharmacy in Winchester, Tennessee. He was subsequently indicted for the robbery and for using a firearm in its commission. Following his arrest, Defendant and his co-defendant, Foster Davis, Jr. ("Davis"), were interviewed by officers of the Winchester Police Department. Defendant and Davis both gave incriminating statements during this interview.

In his motion, Defendant argues his statements were not voluntary due to his consumption of a large quantity of hydrocodone, his alleged head injury, and comments by officers leading

Defendant to believe Davis had given an incriminating statement to the officers. At the evidentiary hearing, the United States offered the testimony of the sole witnesses to testify, Sergeant Mantooth of the Winchester Police Department. Sergeant Mantooth testified he was present during the interview of Defendant and he authenticated the audio recording of Defendant's statement,[1] which was played during the hearing.

According to Sergeant Mantooth, both he and the other officer present during the interview were wearing casual clothes rather than police uniforms, with sidearms and badges attached to their belts. Defendant, whose intelligence level was not disputed, was 63 years old at the time of the interview. From the audio recording and Sergeant Mantooth's testimony, it appears that when Defendant entered the interview room, Davis, Sergeant Mantooth, and another officer were already present. As Defendant entered, he exclaimed, laughing: "We really pissed them off this time!" The officers informed Defendant that Davis had requested his presence, and told Defendant, "Let us read you your rights before you say anything." After reciting the *Miranda* rights, one of the officers asked Defendant if he wanted to talk. Defendant did not respond, and the officer told Defendant that he and Davis "ha[d] screwed up badly." Defendant replied, "Oh, ain't no doubt about that." Again, the officer asked Defendant if he wished to talk. Defendant then responded, "Ain't much to say. Glad everybody's alright." Defendant continued, "Only thing we can do is throw ourselves at the mercy. That means 'yes' I guess. You said we can just stop talking if we want to?" The officer answered in the affirmative, and Defendant signed a waiver of his rights to remain silent and to have a lawyer present during questioning.[2]

---

[1] Government's exhibit 1 is a copy of the audio recording.

[2] Government's exhibit 2 is a copy of Defendant's signed waiver.

2

Sergeant Mantooth testified, and the audio recording corroborates, that the atmosphere during the interview was not antagonistic. Indeed, it appears that the exchange between Defendant and the officers was convivial. Defendant spoke freely, occasionally making jokes and laughing. During the interview, Defendant reported he was on parole for an earlier robbery and had spent some 31 years in prison. He admitted to carrying out the robbery of Bennett's Pharmacy and gave his rationale for the crime. Defendant acknowledged he was addicted to pain medications and indicated he and Davis were planning to ingest some of the stolen pills and sell others. He remarked that his income was limited to $292 per month and that it was "hard to make it on that." Shortly thereafter, one of the officers told Defendant, "I'm not going to lie to you; you're in deep trouble. More than likely, ATF [Bureau of Alcohol, Tobacco, Firearms and Explosives] will be wanting to talk to you on Monday." Defendant replied, "We're through anyway" and echoed Davis' remark that "somehow" he always knew he would "die in prison." The interview of Defendant lasted approximately 37 minutes.

On cross-examination, Sergeant Mantooth testified that he is familiar with the effects of pain medications on individuals who are under their influence, and he concluded Defendant was not intoxicated during the interview. He gave several factors in support of his conclusion, including that Defendant's speech was not slurred, Defendant walked well considering his advanced age, Defendant seemed to realize what was going on around him, Defendant displayed a sense of humor, Defendant recounted his previous experiences in prison, and Defendant discussed the details of the robbery and the quick response of law enforcement. Sergeant Mantooth acknowledged there were loose pills on the floorboard of the getaway car at the time of Defendant's arrest and that Defendant said he was hooked on hydrocodone.

3

Defendant, who was a front seat passenger, was apprehended after a car chase that ended when police "pivoted" Defendant's vehicle and pushed it into a guardrail. Sergeant Mantooth did not know the speeds reached during the chase because he arrived at the scene after Defendant was already in custody. Sergeant Mantooth testified Defendant did not receive, or appear to need, medical attention. He further testified Defendant did not claim to have suffered any injury and Sergeant Mantooth saw no indication (from scratches or abrasions) that Defendant had suffered any injury. Sergeant Mantooth acknowledged he is not an expert on closed head injuries or concussions. When asked whether he had noticed a shattered window on the passenger's side of the vehicle (from which it might be inferred that Defendant had struck his head), Sergeant Mantooth did not recall the condition of the window.

### III.  Legal Standards

A determination of the voluntariness of a defendant's confession is viewed under the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). The government bears the burden of proof to show by a preponderance of the evidence that a defendant voluntarily waived his *Miranda* rights. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986). When a defendant claims a confession was coerced, the government bears the burden of proving by a preponderance of the evidence that the confession was voluntary. *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999); *United States v. Wrice*, 954 F.2d 406, 410 (6th Cir.1992). The defendant, however, must first point to some evidence of improper police activity. *See United States v. Gatewood*, 230 F.3d 186, 193 (6th Cir. 2000) (where defendant "failed to advance any evidence of coercive police activity," confession was properly admitted).

In assessing whether a confession is made voluntarily, a court must determine whether it was

4

the product of the defendant's unconstrained free will. *Schneckloth*, 412 U.S. at 225; *see also Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994). The Due Process Clause of the Fifth Amendment requires exclusion of statements elicited by means of physical or psychological police coercion sufficient to overbear the defendant's will to resist. *Ledbetter*, 35 F.3d at 1067; *see also Oregon v. Elstad*, 470 U.S. 298, 306-07 (1985). While the coercive effect of psychological tactics may be "just as real" as the fear of physical torture, there is no coercion when police merely emphasize "the results of ultimately being convicted of the crime," even if police lead the suspect "to believe that [their] knowledge of his guilt is greater than it actually is." *Ledbetter*, 35 F.3d at 1070. Without a predicate finding of police coercion, a court may not find a confession involuntary. *Connelly*, 479 U.S. at 165-67 (even if a mentally ill defendant subjectively felt "coerced," the coercion was not attributable to the government); *see also Gatewood*, 230 F.3d at 193 (defendant produced no evidence of coercive police conduct; his statements were therefore voluntary); *United States v. Macklin*, 900 F.2d 948, 951-52 (6th Cir. 1990) (where there was no coercive police conduct and defendants understood the consequences of their actions, confession of mentally retarded defendants was voluntary); *United States v. Newman*, 889 F.2d 88, 94-95 (6th Cir. 1989) (no coercive conduct by interrogating agents; thus, defendant's mental impairment from alcoholism did not render his statements involuntary).

A determination that police activity was objectively coercive is necessary, but not sufficient, to find a suspect's statement involuntary. The court must also find that the coercion was "sufficient to overbear the defendant's will" and that "the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement." *United States v. Johnson*, 351 F.3d 254, 260 (6th Cir. 2003); *Mahan*, 190 F.3d at 422. A court must take into consideration "the totality of

5

all the surrounding circumstances--both the characteristics of the accused and the details of the interrogation." *Schneckloth*, 412 U.S. at 226; *United States v. Rigsby*, 943 F.2d 631, 635-36 (6th Cir. 1991) (although defendant's education was limited, he understood the nature of the waiver of his rights and his confession was therefore voluntary). Relevant factors include the defendant's age, education, and intelligence; whether the defendant was informed of his constitutional rights; the length and extent of the questioning; and the use of any physical punishment. *Ledbetter*, 35 F.3d at 1067. If in the totality of circumstances it appears that the statement was coerced or compelled, it may not be used against the defendant. *See Dickerson v. United States,* 530 U.S. 428, 433-34 (2000) (citing *Malinski v. New York*, 324 U.S. 401, 404 (1945)).

## IV.     Analysis

Based upon the totality of the circumstances, I **FIND** the United States has proven by a preponderance of the evidence that Defendant's statements were the product of his own free will. Defendant, a 63 year old man with a great deal of experience in the criminal justice system, fully comprehended his *Miranda* rights and was even able to rephrase them, clarifying whether he could reassert his right to silence if he chose to do so after signing the waiver. The interview was neither prolonged nor abusive. Furthermore, the officers' statements that Defendant was in "deep trouble" and had "screwed up" cannot reasonably be viewed as coercive, especially in light of Defendant's independent realization that he was "through" and that he would probably "die in prison." Instead, the officers were merely, and permissibly, emphasizing the consequences of being convicted of the crime of robbery. *See Ledbetter*, 35 F.3d at 1070.

As Defendant suggests, the record does not entirely foreclose the possibility that Defendant had taken drugs or had incurred some sort of a head injury prior to the interview. Even assuming

6

(without so finding) such drug use or injury, I **FIND** the evidence demonstrates Defendant's ability to understand his circumstances and to voluntarily choose to speak with the investigating officers was not impaired. During the interview, Defendant rationally explained his decision to commit the robbery (to palliate his addiction and augment his fixed income) and calmly reflected on the crime, exhibiting relief that no one was hurt during its commission.

Finally, Defendant's motion argues that the interviewing officers coerced his statements by leading him to believe that Davis had already given an incriminating statement. No evidence to that effect, however, was presented during the hearing. Furthermore, even assuming (again without so finding) the officers did in fact mislead Defendant, police do not overbear a suspect's will when they merely lead him to believe that their knowledge of his guilt is greater than it actually is. *Ledbetter*, 35 F.3d at 1070. Viewing the totality of the circumstances, I **FIND** Defendant's statements were voluntary and not the product of police coercion.

## V. Conclusion

For the reasons stated herein, I **RECOMMEND** that Defendant's motion to suppress [Doc. 19] be **DENIED**.[3]

s/Susan K. Lee
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[3] Any objections to this report and recommendation must be served and filed within ten (10) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).